NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

LAMBERTO GUZMAN, *Petitioner/Appellant*,

*v.*

JOY SOTO, *Respondent/Appellee*.

No. 1 CA-CV 25-0792 FC

FILED 07-08-2026

Appeal from the Superior Court in Maricopa County
No. FC2021-006690
The Honorable Amanda M. Parker, Judge

**AFFIRMED**

COUNSEL

Troon Law Group PLLC, Scottsdale
By C. Kirk Di Giacomo
*Counsel for Petitioner/Appellant*

Colburn Hintze Maletta PLLC, Phoenix
By Judie M. Rettelle, Henry Alzate
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

_____

**C A T L E T T**, Judge:

¶1        Lamberto Guzman ("Father") appeals the superior court's order denying his Petition to Modify Legal Decision-Making Authority, Parenting Time, and Child Support ("Petition"). Because the court did not err in concluding Father did not sufficiently prove a material change in circumstances affecting the welfare of his children, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Father and Joy Soto ("Mother") (together, "Parents") were married and share two minor children ("Children"). In early 2022, the court entered a consent decree dissolving the Parents' marriage and awarding joint legal decision-making authority and equal parenting time.

¶3        Later that year, the court entered a Stipulated Agreement and Order ("Stipulated Order") modifying the consent decree to allow Mother and Children to relocate to Florida. In the Stipulated Order, the court set Father's child support obligations, established that the Children would reside primarily with Mother, and permitted Father, among other parenting time, to spend spring breaks with the Children. The Parents agreed to "maximize Father's involvement in Children's lives[.]" They also agreed to (1) cooperate on travel expenses so the Children could "maintain a meaningful relationship with Father" and (2) "obtain[] passports for [the] Children" for agreed-upon international travel.

¶4        Since then, Parents' relationship has been contentious. Both have sought court intervention, with Father alleging wrongful denial of access to the Children and both accusing the other of hindering co-parenting.

¶5        In February 2025, the court held Mother in contempt ("Contempt Ruling") for consenting to dental work for the Children without consulting Father and for curtailing Father's parenting time during the Children's 2023 spring break. But the court rejected Father's allegations that Mother interfered with other parenting time and refused to cooperate

in obtaining passports for the Children.  The court noted that the limited record reflected "a myriad of obscene comments by both [P]arents . . . made in the presence of the Children[.]"  And it admonished Parents for their "repeated" and "chronic" communication-related violations.

¶6            Then in May, Father filed the Petition, asking the court to grant him final legal decision-making authority, return the Children's primary residence to Arizona, recalculate child support, and award him attorney fees.  Father cited the following as material changes justifying modification: an attempt Mother made in Florida to modify the Stipulated Order, disputes over travel, unexplained injuries to the Children, and Mother making unilateral legal decisions without Father's input.

¶7            Mother responded by seeking to transfer jurisdiction to Florida and dismiss the Petition.  Mother argued venue is proper in Florida because it is the Children's home state where they have lived for nearly three years.   The court denied Mother's motions, instead setting an evidentiary hearing.

¶8            Only the Parents testified at that hearing.  They submitted evidence about disputes over international travel and obtaining passports for the Children, counseling for one child, the circumstances surrounding the other child's injuries, and disparaging comments both Parents made about the other to the Children.  Father also testified that he believed Mother's attempt to modify the Stipulated Order in Florida was aimed at taking the Children from him.

¶9            The Parents also testified about Father's allegation that Mother engaged in unilateral legal decision-making.  Mother admitted she enrolled their son in a school without obtaining Father's consent.  She explained he was waitlisted at their daughter's school, and the school year was about begin only days later.  She also maintained that, consistent with the Stipulated Order, their son's school was within their district.

¶10           The court also heard testimony about Father's allegation that Mother obstructed his parenting time for the Children's 2025 spring break.  Father was willing to pay for the Children to participate in an airline's unaccompanied minor program to spend their spring break in Arizona.  Mother refused.  She believed the Children, who were five and eight years old at the time, were too young to fly alone.  Instead, she wanted Father to fly with them to Arizona.  Father could not afford three round trip tickets, but he also did not travel to Florida to be with the Children.  Despite

blaming Mother, he admitted she did not prohibit the Children from seeing him during their spring break.

**¶11**　　　The court addressed each basis of Father's Petition and concluded he failed to prove a "material change in circumstances" affecting Children's welfare.  The court also determined that Father did not provide evidence supporting that the Children should be relocated to Arizona.  *See* A.R.S. § 25-408(I) (listing factors a court must consider in determining whether relocation is in child's best interests).  It concluded the record showed that Parents continue to be hostile and show a "lack of respect for the other[.]"  But such behavior was "not new," so it did not constitute a material change in circumstances.  Lastly, the court denied both Parents' requests for attorney fees.

**¶12**　　　Father timely appealed.  We have jurisdiction.  A.R.S. § 12-2101(A)(2).

## DISCUSSION

**¶13**　　　Father argues the court erred by (1) misapplying the two-stage inquiry for modifying legal decision-making and parenting time and (2) denying his request for attorney fees.

**¶14**　　　We review the superior court's ruling on a petition to modify legal decision-making and parenting time for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423 ¶ 9 (App. 2019).  An abuse of discretion occurs when the court commits a legal error in reaching a discretionary decision or when the record does not support its decision.  *See Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018).

**¶15**　　　When deciding whether to modify legal decision-making and parenting time, "the superior court must engage in a two-stage inquiry." *Backstrand v. Backstrand*, 250 Ariz. 339, 343 ¶ 14 (App. 2020).  First, the court must determine "whether there has been a change of circumstances materially affecting" the children's welfare. *Id.* (citation omitted).  If it finds such a change, the court then must determine whether the proposed modification is in the children's best interests. *Id.*; *see also* A.R.S. § 25-403(A).  Whether such a change has occurred is a "fact-intensive" inquiry, and the moving party has the burden of proof. *Engstrom*, 243 Ariz. at 472 ¶ 10; *Backstrand*, 250 Ariz. at 343 ¶ 14.  The court has broad discretion when determining whether a sufficient change in circumstances has occurred. *Backstrand*, 250 Ariz. at 343 ¶¶ 14–19, (relocation of child to another state satisfied first step of inquiry); *Canty v. Canty*, 178 Ariz. 443, 448 (App. 1994) (same).  We do not reweigh the evidence; we instead "defer to the [superior]

court's determinations of witness credibility and the weight given to conflicting evidence." *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019).

## I.      Modifying Legal Decision-Making and Parenting Time

**¶16**          Father argues the evidence contradicts the court's conclusion that there was no material change in circumstance—the first stage of the inquiry.  Father contends Mother's actions prove the Stipulated Order no longer maximizes his parenting time.  But the court addressed his allegations, including some Father does not raise on appeal, and it determined Father did not meet his burden.  The court did not abuse its discretion.

**¶17**          First, Father accuses the superior court of "gloss[ing] over" Mother's attempt to modify the Stipulated Order in Florida.  He argues the court did not properly consider whether such conduct is inconsistent with the Stipulated Order's provision about maximizing Father's parenting time. The court determined that Mother's attempt to litigate in the Children's home state on its own did not support that she is alienating Father from Children.  Father's contention that the court should have decided differently requests that we reweigh the evidence, which we will not do. *See Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009) ("Our duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence.").

**¶18**          Similarly, Father asks us to second guess the court's conclusion about Mother violating the Stipulated Order.  Father argues the court had to conclude that those violations were a material change in circumstances.

**¶19**          Despite Parents sharing legal decision-making authority, Mother enrolled one of the Children in school before consulting Father.  The court agreed she should have consulted Father before doing so.  But it did not find that this failure to consult Father or its prior Contempt Ruling proved a material change in circumstances.  The court excused Mother's failure based on undisputed testimony that the child was waitlisted at the other child's school, enrollment was temporary, it aligned with a stipulation that the Children attend school in their district, and Mother had informed Father.  The record reasonably supports these findings, and these findings adequately support the superior court's conclusion.  Again, we do not reweigh the evidence or witness credibility. *See Hurd*, 223 Ariz. at 52 ¶ 16. And Father provides no support for his implicit position that the superior

court is required to find a material change in circumstances whenever one parent violates another's legal decision-making authority.

¶20 Next, Father complains the court brushed aside evidence that Mother obstructed his parenting time during the Children's 2025 spring break. The court concluded that any infringement on Father's parenting time was "largely [due to] his finances," rather than Mother intentionally obstructing parenting time. The record shows that Father admitted he could not afford three round trip tickets, he did not fly to Florida to spend spring break with the Children, and Mother did not prohibit him from exercising parenting time. Father seems to argue the court gave insufficient weight to the evidence, namely his testimony. But it is for the superior court, not us, to determine what weight to give to evidence. *Id.* The court's conclusion is again supported by its factual findings, and the record reasonably supports those findings.

¶21 Still, Father asserts evidence supports that it was Mother's unwillingness to compromise and her making it "logistically difficult" that prevented him from exercising his parenting time. The fact that evidence in the record might reasonably support other findings does not establish that the court abused its discretion. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347 ¶ 13 (App. 1998) ("The evidence in this case was conflicting. We will defer to the [superior] court's determination of witnesses' credibility and the weight to give conflicting evidence."). The evidence sufficiently supports the court's conclusion that Mother did not obstruct Father from seeing the Children during Spring Break 2025.

¶22 Next, Father argues the court did not consider the cumulative effect of Mother's actions and hostility towards him. The court concluded the record showed that both Parents were hostile toward each other and both showed a lack of respect for the other. It concluded that this situation was "not new," so it did not constitute a material change. Father asks us to disregard the court's findings and conclusions regarding his conduct and only consider Mother's conduct. At bottom, Father argues the evidence should be reweighed and reconsidered on appeal, which we (again) refuse to do. *See Hurd*, 223 Ariz. at 52 ¶ 16. On this record, Father has not shown that the court erred in concluding he failed to sufficiently show a material change of circumstances. *See Backstrand*, 250 Ariz. at 343 ¶ 14.

¶23 Lastly, Father argues the court erred by not conducting a best-interests analysis, the second step of the inquiry. But the court was not required to do so after concluding there was no material change in circumstances. *See Black v. Black*, 114 Ariz. 282, 283 (1977) ("Only after [the]

initial finding has been made may the trial court then proceed to determine whether a change in custody will be in the best interests of the child."). Without Father satisfying the first requirement, the court was not required to address the second. Father has not shown the court erred.

## II.    Attorney Fees in the Superior Court

**¶24**    Father asserts he was entitled to attorney fees because Mother missed unspecified deadlines and "forced Father to incur additional litigative strain[.]" The superior court may award reasonable attorney fees "after considering the financial resources of both parties and the reasonableness" of their positions. A.R.S. § 25-324(A); *see also Ferrill v. Ferrill*, 253 Ariz. 393, 399 ¶ 25 (App. 2022) (award of attorney fees is to the court's discretion). We review an order denying attorney fees for abuse of discretion. *Mangan v. Mangan*, 227 Ariz. 346, 352 ¶ 26 (App. 2011).

**¶25**    Here, the court declined to award either party attorney fees because "[b]oth [P]arents' conduct was unreasonable." Because the record supports that conclusion, the court did not err.

## ATTORNEY FEES ON APPEAL

**¶26**    Mother requests attorney fees on appeal under Arizona Rule of Civil Appellate Procedure 21 and A.R.S. § 25-324, arguing Father's appeal was frivolous. In our discretion, we deny Mother's request. But as the prevailing party on appeal, we award Mother her costs once she complies with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶27**    We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR